Appellant, Rodney Floyd, was convicted of the offense of rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975, and sentenced to thirty-five years' imprisonment in the penitentiary. Appellant raises ten issues.
Appellant contends that the trial court erred to reversal in denying his motion to quash the jury panel based upon the state's "purposeful striking of Blacks from the venire of prospective jurors." He asserts that the prosecuting attorney expressly admitted that race was a factor in striking Blacks from the venire of prospective jurors.
The record shows the following:
 "MR. PELFREY: I make a motion to quash the selection of this jury and challenge the State of Alabama as to their strikes — of the 13 strikes with the exception of the 7th strike, the 8th strike, the 11th and 12th strikes [, all] strikes were black prospective jurors on the venire, and only four of their strikes were of white prospective jurors.
"THE COURT: How many strikes did each side have?
"MR. PELFREY: 13, your Honor. *Page 358 
 "MR. LeMAISTRE: Judge, we strike jurors based on information that we have on age — . You know, race enters in but we don't strike all black veniremen. We have never shown a history of striking black people in any particular class of case. And the people that were struck in this particular case were struck for reasons other than race. And we just deny that we have attempted to systematically exclude black people from this venire or any other venire.
 "We had 13 strikes. Had we chosen to do so we could have excluded all blacks from the jury. There are at this point two blacks that will serve and two alternates with possibility of service.
 "THE COURT: You have two on it plus two alternates?
 "MR. LeMAISTRE: One alternate. There on this jury that [is] black.
"THE COURT: Okay. Overrule your motion."
We find that this issue has been properly preserved for our review. After a review of the facts, we are constrained to remand this cause pursuant to the holding of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Accordingly, this case is remanded to the trial court with instructions that the court give the prosecutor the opportunity to come forward with explanations for his use of the peremptory strikes. If the court determines that the strikes were not race-neutral, then appellant is entitled to a new trial. Ex parte Owens, 531 So.2d 21 (Ala. 1987). In the event that the trial court rules that appellant is not entitled to a new trial, the court shall make written findings on this issue and forward those, along with a transcript of the hearing, to this court.
In view of the holding above, we pretermit discussion of the remaining issues raised.
On original appeal, we remanded this case, in accordance with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), to the trial court with instruction that the court give the prosecutor the opportunity to come forward with explanations for his use of peremptory strikes.[1]
Originally, we found that, after special qualifications by the trial judge, there remained 12 black persons on the jury venire. Each side had 13 strikes. The prosecutor utilized his strikes in striking nine blacks from the venire, with the last black stricken being used as an alternate, who did not serve during deliberations. Appellant struck one black from the venire. The jury consisted of two black members and ten white members.
In accordance with our instruction, the lower court conducted a hearing wherein the prosecutor gave the following explanations for the utilization of his peremptory strikes in striking the nine black venirepersons:
Henry Efford:
 "My record, Judge, reflects that my first strike was Henry Efford who was a black male, age twenty-five at that time, residing at Route 1, Box 399, Louisville. That was the State's first Strike.
 "We struck Mr. Efford for several reasons: one of which, we had recently, prior to that date, prosecuted a defendant named Efford in the Bullock County Circuit Court, and I did not know whether this person was related or not, and chose not to allow a person by that name to serve on this jury, and took a strike to exclude him. Also, as this Court is aware, but for the sake of the appeal that will follow this ruling, perhaps this *Page 359 
particular case, State versus Rodney Floyd, dealt with a situation of a crime where it was alleged that an approximately twenty-year-old black male raped an elderly lady in the neighborhood of seventy or seventy-five years old at the time. It was my thinking that I did not want any young people serving on this jury, and it was my objective to strike whatever young people I could from that venire.
 "As I've already stated, Mr. Efford was twenty-five at the time of the trial of this case, and we struck him for the additional reason of his youth, or what the State determined to be his youth at that time."
Velma Efford:
 "The second strike we took was a black female by the name of Velma Efford. She at the time of this trial was twenty-six years old. She, I believe, was the sister of our first strike as they have the same address, Route 1, Box [3]99, Louisville, or, perhaps, they are husband and wife. Again, the juror's last name is the same as a criminal defendant that I have prosecuted previously in Bullock County. Again, she fell into the age range that we were attempting to exclude from this case."
Christine G. Whigham:
 "My third strike, I believe the record will reflect, was Christine G. Whigham, a black female, who at the time of the trial was twenty-six years old. She resided at Route 1, Box 321, Clayton, Alabama.
 "We chose to strike Ms. Whigham because, again, she fell within the age framework that we would prefer not to have sit in judgment on a case with the facts that the State versus Rodney Floyd had in it, an additional factor that did not relate to the first two strikes that I took but did relate to Ms. Whigham and several others who I did get in to. We also did not feel that we would want to put a juror who knew the defendant in the position of judging the case although I'm sure the record may reflect that your Honor questioned potential jurors as to whether that knowledge or knowing the defendant would bias or prejudice them in any way or whether they could make a decision based on the facts and put that aside, and I feel certain that each of these people we struck responded in the affirmative.
 "It is still the State's position that this type of case, of most serious nature, could be best judged by totally objective people that didn't have any potential bias one way or the other, and we sought to eliminate persons who knew the defendant in this case."
Orlando Rumph:
 "Our fourth strike was Orlando Rumph who at the time of this trial was twenty-three. His address was Route 1, Box 131, Clayton. Again, he fell into the age category that I chose to exclude as much as possible in this particular case, and he also on voir dire admitted knowing the defendant, and for that reason we — for that additional reason we chose to strike him.
 "Now, back to my third strike which was Ms. Whigham. I believe I related this, but just for clarification, she did state during voir dire questions that she did know the defendant, Rodney Floyd." Malcolm Hamilton:
 "My fifth strike was Malcolm Hamilton. At the time of this trial he was thirty years of age residing at Oak Avenue in Clayton. Mr. Hamilton, again, fell into the age category that we — that I was attempting to exclude from jury service in this particular case based on the type case, and the facts of the case." Essie C. Knight:
 "The sixth strike that I took was Ms. Essie C. Knight. She was thirty-nine years of age at the time of the trial of this case, and on voir dire questioning stated that she knew the defendant, and for that reason we chose to exclude her from jury service by use of a peremptory strike on her."
Linda J. Lowe:
 "My ninth strike was Linda J. Lowe. She is a black female who at the time of this trial was aged twenty-nine, living at Route 1, Box 63, Clio. Ms. Lowe was *Page 360 
within the age range that we were or I was trying to exclude from the jurors in the trial of this case. On voir dire questioning she also stated she knew the defendant, Rodney Floyd, that being a second reason that we chose to strike Ms. Lowe."
Angela Govan:
 "My tenth strike is number fifteen, Ms. Angela Govan. . . .
 "Ms. Govan is a black female who at the time of this trial was aged twenty-one and resided at P.O. Box 24 in Clio. She, again, fell into the age range that we were attempting to exclude from service on this jury."
Emanuel McCauley:
 "My thirteenth strike, who served as an alternate but did not participate in the rendering of a verdict in this case, was Emanuel McCauley, who at the time of this trial was thirty years old, living at Route 2, Box 145, Clayton. He fell within the age range that the State was attempting to exclude from participation in the trial of this case, and also on voir dire questioning stated that he knew the defendant, and he was struck for that reason also."
On return to remand, the lower court found the following:
 "1. That this Court does not necessarily find that a case of purposeful discrimination was established by the Defendant as the strike list affirmatively shows that not all blacks were removed from the jury as they could have been. This Court however, does not make a finding on this as the instructions from the Court of Criminal Appeals seem to require that the Prosecutor must give race-neutral reasons for his strikes without this Court having first found that a Prima Facie case of purposeful discrimination exists. [See footnote 1 to this opinion.]
 "2. That the District Attorney . . . came forward and gave the reasons for every person he struck from the jury and that each and every reason he gave for striking a black was race-neutral. Further, the reasons given were sufficient for any competent attorney to strike that particular venireman.
 "3. The Court further finds the testimony given by the District Attorney was truthful and that there was no purposeful racial discrimination involved in the selection of the jury that tried the above named defendant and the above named defendant is not entitled to a new trial, it is:
 "THEREFORE ORDERED that a new trial for the defendant Rodney Floyd be the same and is hereby denied."
The specific question presented here is whether the state's explanations for the exercise of its challenges were racially neutral. In reviewing the record, it is apparent that the court did not apply the guidelines enumerated in Branch v.State, 526 So.2d 609 (Ala. 1987) (as modified on rehearing, December 4, 1987). We have considered remanding this case for another hearing in order to give the court an opportunity to apply the Branch guidelines. See, e.g., Avery v. State, [Ms. 5 Div. 348, March 22, 1988] (Ala.Cr.App. 1988). We find, however, that a sufficient record has been made and that a second hearing would serve no useful purpose here; particularly, in view of the fact that the judge who conducted the Batson
hearing was not the trial judge. See State v. Butler,731 S.W.2d 265 (Mo.App. 1987). After applying the principles ofBatson and Branch to the instant case, we do not reach the same conclusions as those reached by the lower court.
In Branch, 526 So.2d at 624, our supreme court outlined the duties imposed on the lower courts in the following manner:
 "The trial court, in exercising the duties imposed upon it, must give effect to the state policy expressed in Sections 1, 6, and 22 of the Alabama Constitution and Code 1975, § 12-16-55 and § 12-16-56. Furthermore, the trial judge must make a sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he knows them, his knowledge of trial techniques, and his observation of the *Page 361 
manner in which the prosecutor examined the venire and the challenged jurors. People v. Hall, 35 Cal.3d 161, 672 P.2d 854, 858, 197 Cal.Rptr. 71
(1983); see also [People v.] Wheeler, 22 Cal.3d [258,] 281, 583 P.2d [748,] 764, 148 Cal.Rptr. [890,] 906 [(1978)].
 "In evaluating the evidence and explanations presented, the trial judge must determine whether the explanations are sufficient to overcome the presumption of bias. Furthermore, the trial judge must be careful not to confuse a specific reason given by the state's attorney for his challenge, with a 'specific bias' of the juror, which may justify the peremptory challenge:
 " 'The latter, a permissible basis for exclusion of a prospective juror, was defined in Wheeler as "a bias relating to the particular case on trial or the parties or witnesses thereto." Wheeler, 22 Cal.3d at 276, 148 Cal. Rptr., at 902, 583 P.2d at 760. Further, a review of the record demonstrated that the prosecutor had not, in fact, satisfied his burden of showing that he excluded the Spanish surnamed jurors on the grounds of specific bias.'
 "Slappy [v. State], 503 So.2d [350,] 354 [(Fla. Dist. Ct. App. 1987), aff'd, 522 So.2d 18 (Fla. 1988)]. The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, see Hall, 35 Cal.3d at 168, 672 P.2d at 858-59, 197 Cal.Rptr. at 75; Slappy, 503 So.2d at 356; the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination. See Slappy, supra. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror. Finally, if the trial judge determines that there was discriminatory use of peremptory challenges, an appropriate remedy may be to dismiss that jury pool and start over with a new pool. [Ex parte] Jackson, [516 So.2d 768, 772 (1986)], citing [State v.] Neil, [457 So.2d 481,] 487, [(Fla. 1984)]. This remedy is not exclusive, however." (Emphasis in original.)
Furthermore, Branch further suggests that the following guidelines be utilized in evaluating the prosecutor's proffered explanations:
 "After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723. The state then has the burden of articulating a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723. However, this showing need not rise to the level of a challenge for cause. Jackson, supra; Neil, 457 So.2d at 487; Wheeler, 22 Cal.3d at 281-82, 583 P.2d at 765, 148 Cal.Rptr. at 906.
 "In addition to a clear, specific, and plausible nondiscriminatory explanation of a specific characteristic that affected the decision to challenge, the following are illustrative of the types of evidence that can be used to overcome the presumption of discrimination and show neutrality:
 "1. The state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck.
 "2. There is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the venire.
 "Batson makes it clear, however, that '[t]he State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result." ' Batson, 476 U.S. at 93, 106 S.Ct. at 1721, citing Alexander v. Louisiana, 405 U.S. 625, 632 *Page 362 
[92 S.Ct. 1221, 1226, 31 L.Ed.2d 536] (1972). Furthermore, intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723. Finally, a prosecutor cannot overcome the presumption 'merely by denying any discriminatory motive or "affirming his good faith in individual selections." ' Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723, citing Alexander, 405 U.S. at 632 [92 S.Ct. at 1226].
 "Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. Wheeler, 22 Cal.3d at 282, 583 P.2d at 763-64, 148 Cal.Rptr. at 906. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
 "1. The reasons given are not related to the facts of the case.
 "2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.
 "3. Disparate treatment — persons with the same or similar characteristics as the challenged juror were not struck. Slappy, 503 So.2d, at 354; [People v.] Turner, 42 Cal.3d [711,] 725, 726 P.2d [102,] 110, 230 Cal.Rptr. [656,] 664 [(1986)]; Wheeler, 22 Cal.3d at 282, 583 P.2d at 760, 148 Cal.Rptr. at 906.
 "4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 "5. The prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the venire. Cf. Slappy, 503 So.2d at 354; Turner, 42 Cal.3d at 715, 726 P.2d at 103, 230 Cal.Rptr. at 657.
 "6. '[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.' Slappy, 503 So.2d, at 355. For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror."
526 So.2d at 624 (emphasis in original). The instant explanations contrasted against the record before us are a clear example of the danger of taking the explanations at face value rather than scrutinizing them carefully. After considering the prosecutor's explanations individually as well as collectively, we find that the prosecution failed to overcome the prima facie showing of discrimination.
The prosecutor struck Henry Efford, age 25, and Velma Efford, age 26, because of their young age and because he had previously prosecuted an Efford in Bullock County. In striking the Effords, the prosecutor stated, "I did not know whether this person was related or not, and chose not to allow a person by that name to serve on this jury." InBranch, our supreme court found that "intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination." 526 So.2d at 623. Here, the prosecutor was merely suspicious that the Effords were related to the previously prosecuted Efford. The prosecutor could have easily ascertained the relationship, if any, between the prosecuted Efford and the prospective jurors by asking the venirepersons a simple question on voir dire. The record reflects, however, that the Effords were not the subject of any voir dire examination. "A prosecutor's failure to engage Black prospective jurors 'in more than desultory voir dire, or indeed to ask them any questions at all,' before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias." People v. Turner,42 Cal.3d 711, 726 P.2d 102, 111, 230 Cal.Rptr. 656 (1986). Furthermore, Branch states that where there is "a lack of questioning to the challenged juror, or a lack of meaningful questions," then that evidence can be used to show that the proffered explanations are a "sham or pretext."526 So.2d at 624. *Page 363 
We find the prosecutor's explanation that the Effords could conceivably be related to the previously prosecuted Efford to be inadequate.
The prosecutor stated that he struck the Effords also because of their young age. The prosecutor similarly struck the following black prospective jurors because of their age: Christine Whigham, age 26; Orlando Rumph, age 23; Malcolm Hamilton, age 30; Linda Lowe, age 29; Angela Govan, age 21; and the alternate, Emmanuel McCauley, age 30.[2] In explaining why he chose to strike young people from the venire, the prosecutor stated the following:
 "[T]his particular case . . . dealt with a situation of a crime where it was alleged that an approximately twenty-year-old black male raped an elderly lady in the neighborhood of seventy or seventy-five years old at the time. It was my thinking that I did not want any young people serving on this jury, and it was my objective to strike whatever young people I could from that venire."
The prosecutor further stated that "it was my thinking that persons under the age of thirty-five, forty years of age, that we would attempt to exclude people that were younger than that age." Considering "age" based strikes, the Branch court stated, "[S]trikes based on 'age,' while sometimes relevant, are basically 'group-based' strikes." 526 So.2d at 626, n. 13. While age could possibly be relevant in the instant case, we find the prosecutor's explanations to be doubtful, because he failed on voir dire to inquire into any age-based biases the prospective jurors might have.[3] See Slappy v. State,503 So.2d 350 (Fla.Dist.Ct.App. 1987), aff'd, 522 So.2d 18 (Fla. 1988). Even more damaging is the fact that he did not challenge the white prospective jurors that fit into the same age category. The deliberating jury contained eight white jurors under the age of 39. This disparate treatment of members of the excluded group and the unchallenged jurors is further reason to conclude that the prosecutor's explanations did not overcome the prima facie showing of discrimination. Branch,526 So.2d at 622; Floyd v. State, 511 So.2d 762 (Fla.Dist.Ct.App. 1987); Slappy, supra.
The lower court, apparently concerned about the age-based strikes, engaged the prosecutor in the following colloquy:
 "Q. You stated that on voir dire you didn't want anybody on the jury panel that knew the defendant; is that correct?
"A. That's correct.
 "Q. And that was a consideration overriding the age consideration; is that correct?
 "A. Yes, sir, it was a consideration in addition to the age. Yes, sir.
 "Q. All right. But, it was — would it — it would have been a consideration that was above the age consideration in your mind; is that correct?
"A. Yes, sir.
 "Q. And your eighth strike was Thomas J. Beaty, who was fifty-nine years old. He was fifty-nine years old. He was a white male, and you struck him because you thought he might be dissatisfied with you [about his prior dealings with the District Attorney's Office] and would hold it against you and not give the State a fair trial.?
"A. That's correct.
 "Q. Also, Y.Z. Wilkinson who was a white male, age forty-two, and you struck him for the same reason?
"A. That's correct, your Honor.
 "Q. And Dennis C. Baxley was a white male that you struck that was over the age of thirty-four years. And I missed your reason for that. What was that? That was your twelfth strike. *Page 364 
 "A. Your Honor, I would have to be candid with the Court, I cannot recall. I don't have any notes as to that particular strike that I took.[4]
 "Q. But at any rate, any strikes you took that [were] over the age of thirty years was a strike on a white person other than the one that you struck, Ms. Knight, because she knew the defendant; is that right?
"A. Yes, sir.
 "Q. And that being the case you couldn't get the rest of them off that was under that age?
"A. No, sir, I could not. . . ."
The prosecutor further explained that those white venirepersons who were in their twenties or thirties and not struck by the state did not know the defendant. Yet, the record does not support the prosecutor's additional explanation that venirepersons Whigham, Rumph, Lowe, and McCauley indicated during voir dire questioning that they knew the defendant. Likewise, the record fails to support his sole reason for striking venireperson Knight — that she indicated that she knew the defendant.
The prosecutor's entire voir dire examination consisted of one question. The prosecutor's portion of the voir dire is as follows:
 "[PROSECUTOR]: Judge, we would just like to know who in the venire knows the defendant.
 "THE COURT: Those of you who know the defendant would you hold your hand up. Just jurors, now — those jurors who know the defendant at all. (One hand upraised.) How about Mrs. Miller? Those of you who know her would you hold your hand up. (Several hands upraised.)
"THE COURT: Do you want the names?
"[DEFENSE ATTORNEY]: Yes, sir.
 "THE COURT: Please stand if you know Mrs. Miller. (THEREUPON, several jurors stood and stated their names.)
 "THE COURT: All right. Now, the fact that you know Mrs. Miller, would that influence your verdict if you were picked on the jury, or would you be free of any bias that might be generated by that friendship and be free and capable of rendering a fair and impartial verdict based only on the law? If you would be influenced by that friendship to the extent that you feel it would affect your verdict, please hold your hand up. (No response.)
 "All right, any other special qualifications for the State?
 "[PROSECUTOR]: The State is satisfied, your Honor." (Emphasis added.)
Immediately preceding the prosecutor's voir dire, the trial court asked the following question:
 "Is there any reason because of your friendship with the defendant or with the alleged victim or any member of their immediate family that you feel that it would just not be appropriate for you to sit in judgment on this particular issue?"
In response to this question, only two venirepersons indicated that they knew the defendant, and the trial court excused them because they also indicated that their acquaintenance would influence their verdict.
There is an obvious conflict here. The prosecutor stated that he struck five prospective jurors because they indicated that they knew the defendant. The record, however, reflects that only one prospective juror, excluding those that were excused, knew the defendant. We do not think that the "one hand upraised" is in error, particularly, in view of the fact that the trial judge questioned those jurors who knew Mrs. Miller and did not question the one juror who knew the defendant. We cannot accept the prosecutor's explanations in this instance either.
"[T]he striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." Floyd v. State,511 So.2d at 764 (quoting United States v. Gordon, *Page 365 817 F.2d 1538, 1541 (1987), vacated on other ground, 836 F.2d 1312
(11th Cir. 1988)). Although there were two black jurors on the jury, we find the explanations given by the prosecutor for his challenge of the nine black veniremen to be insufficient.
 "[W]hen the state engages in a pattern of excluding a minority without apparent reason, the state must be prepared to support its explanations with neutral reasons based on answers provided at voir dire or otherwise disclosed on the record itself. This requirement helps ensure procedural regularity and racial neutrality."
Slappy, 522 So.2d at 23.
Here, we can conclude only that the prosecutor struck the nine black veniremen without "apparent reason" and without "neutral reasons based on answers provided at voir dire or otherwise disclosed on the record itself." Id.
We, therefore, cannot affirm the lower court's findings. We cannot conclude that the prosecutor's explanations are bona fide explanations. Moreover, we cannot ignore the prosecutor's admission, "You know, race enters in but we don't strike all black veniremen." We are aware that "[w]e may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous." Branch,526 So.2d at 625 (quoting United States v. Mathews, 803 F.2d 325, 330
(7th Cir. 1986), rev'd on other ground, ___ U.S. ___,108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). Based on Branch and the foregoing discussion, we find the trial court's determination to be clearly erroneous. This case is due to be, and it is hereby, reversed and remanded for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] In its order, the lower court noted that it did not necessarily find that appellant made a prima facie case of discrimination, since there were two blacks on the jury. We cannot agree with its reasoning. In United States v. David,803 F.2d 1567, 1571 (11th Cir. 1986), the court found that "underBatson, the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown." See also Fleming v. Kemp,794 F.2d 1478 (11th Cir. 1986). We find the Eleventh Circuit cases to be persuasive in this instance and hold that the cited consideration of two blacks remaining on the jury, in and of itself, is insufficient, as a matter of law, to support a finding that the defendant has established no prima facie case.
[2] The prosecutor also struck Whigham, Rumph, Lowe, and McCauley because they allegedly knew the defendant. We will address that explanation later in this opinion.
[3] During defense counsel's voir dire questioning, which occurred after the court's and the prosecutor's, defense counsel asked the following: "[T]he alleged victim in this case is an elderly white woman and the defendant, Rodney Floyd, is a young black male. Do any of you feel that these factors would affect your ability to render a fair and impartial verdict in this case." No venireperson responded to this question.
[4] As reflected by the transcript four pages earlier, the prosecutor explained that he struck Baxley because, being 34 years old, he fell within the age range that concerned the prosecutor.