Joseph Andrews, Jr., was indicted for trafficking in cocaine, in violation of § 13A-12-231, Code of Alabama 1975. He was found guilty and was sentenced to 35 years' imprisonment. The appellant raises three issues on appeal.
The evidence elicited at trial tended to show the following:
Gary Jenkins, an employee with the Houston County Sheriff's Department, testified that he received information from a confidential informant with regard to cocaine being brought into Houston County. He stated that the informant had said that a black male by the name of Joseph Holloway would be driving a yellow and black Buick Electra automobile with primer spots and bearing a Florida tag and that he would be transporting cocaine. The informant, he said, identified the direction in which the car would be travelling.
Jenkins further testified that after receiving the information, he notified Sheriff Hadden and Investigators Greene, Ketchens, Hughs and Baker. They then proceeded to set up surveillance on Highway 84. Jenkins and Hadden arrived at the surveillance area at 12:30 or 1:00 a.m. It was raining and foggy.
According to Jenkins, at around 1:45 a.m., a car matching the description furnished by the informant was stopped by the officers. The appellant was driving and there were three passengers in the car: a black male, who was in the front passenger seat, and two black females, who were in the back seat. Jenkins testified that he and Hadden removed the occupants from the car and began to search the car. Because of the inclement weather and the lack of adequate lighting, a decision was made to continue the search at the county jail. Jenkins testified that no contraband was found during the roadside search.
The females rode with Jenkins and Hadden to the county jail. The appellant and the other male rode with Investigators Greene and Ketchens. En route to the jail, one of the females kept her hand under her shirt and was "fidgety". Sheriff Hadden noticed her put something behind the seat. When they arrived at the jail, Jenkins found a brown paper sack in the back of the car. It contained 10 bags of marijuana and 7 pieces of crack cocaine. The females were then placed under arrest.
According to Jenkins, the search of the appellant's car continued at the jail. A can of WD-40 lubricant was found in the trunk, sitting on top of a gasoline can. The gasoline can was in turn sitting on a plastic raincoat, which was on top of a tool box. Officer Jenkins said that he picked up the can of WD-40 and shook it and that he took the top off and sprayed it. He stated that the weight of the can aroused his suspicions and that when he twisted the ends of the can the bottom twisted off. Inside the WD-40 can he found a brown paper bag, which contained pieces of what was later determined to be crack cocaine. There were coffee grounds located on the outside of the bag. Jenkins testified that he had the opportunity to ask the appellant what his name was. He told Jenkins that his name was Joseph Holloway. Jenkins said that he subsequently learned that the appellant's name was Joseph Andrews. Jenkins identified State's exhibit 4 as an identification card that had been taken *Page 1097 
from the appellant. This card was issued in the name of Joseph Andrews and showed a Florida address. Jenkins testified that the appellant had indicated that the vehicle he had been driving belonged to him. Receipts were found in the car. Some of these receipts were in the name of Joseph Andrews and some were in the name of Joseph Holloway. A map of Florida and the adjoining states with a line drawn from Florida to Dothan was also located in the car.
On cross-examination, Jenkins indicated that when Sheriff Hadden made the stop of the appellant's vehicle, he activated the blue lights and the "wig-wags" on his patrol car. The appellant traveled approximately 50 yards before stopping. Sheriff Hadden approached the driver's side of the car and Jenkins approached the passenger's side. Jenkins testified that he did not question the appellant at the scene but that he questioned him at the county jail after the search of the appellant's car had been completed. Jenkins indicated that Sheriff Hadden asked the appellant his name at the scene. Jenkins overheard the appellant say that his name was Joseph Holloway.
In addition to the WD-40 can, other items such as fishing rods, tools, an amplifier, and suitcases containing clothes, were also located in the trunk of the car. Jenkins admitted that other people could have had access to the trunk and that the appellant's fingerprints were not found on the WD-40 can. On redirect examination, Jenkins testified that all of the occupants of the car denied ownership of the suitcases.
David Thorne, an employee of the Alabama Department of Forensic Sciences, testified that he received an evidence envelope from the Houston County Sheriffs Department. He said that he examined the contents of the envelope and that it contained 10 small "zip lock" plastic bags. Within each of these bags was off-white compressed material. Thorne testified that he examined the material and that he identified it to be cocaine. Thorne testified that it weighed 29.750 grams.
Sheriff Hadden testified that on the night in question he stopped a vehicle driven by the appellant. It was raining and foggy. Hadden asked the appellant his name and he said that his name was Joseph Holloway. Hadden identified State's exhibit 4 as the identification given to him by the appellant (which was issued in the name Joseph Andrews).
On cross-examination, Hadden testified that the appellant did not pull over immediately when Hadden activated the blue lights on his patrol car and that he continued for what "seemed like a long ways" before he pulled over. Hadden testified that after the search of the car it began to rain harder so he and Jenkins decided to continue the search at the jail.
The appellant testified that on the morning he was stopped, he was traveling to Demopolis, Alabama, where he had family. He testified that the other male and one of the females had suitcases in the car. He stated that he and the other female were sharing a suitcase. The appellant denied having any knowledge of the cocaine and in fact requested the officers to fingerprint the WD-40 can. They declined. He denied telling the sheriff that his name was Joseph Holloway or ever using the name Joseph Holloway.
 I
The appellant contends that the prosecution used its peremptory strikes in a racially discriminatory manner, violating Batson v. Kentucky, 476 U.S. 79 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).
The record reflects that the appellant entered a timelyBatson motion challenging the State's use of its peremptory strikes to remove all 3 black veniremembers from the venire. The trial court took judicial notice that the appellant was a black and conducted a hearing on the Batson motion. The prosecution did not request the trial court to determine whether a prima facie case of racial discrimination had been established but instead proceeded to state its reasons for striking the 3 black jurors. Accordingly, we will review the reasons asserted by the prosecution without addressing whether the prosecution had established a prima facie case. See Jacksonv. State, 594 So.2d 1289 (Ala.Crim.App. 1991). *Page 1098 
The defendant challenged the State's use of its peremptory strikes to strike prospective jurors nos. 28, 75, and 98. The State's reason offered for striking prospective juror no. 28 was that earlier in the week he had served on a jury that had acquitted the defendant. The trial court found this to be a sufficiently race-neutral reason. We agree. See Childers v.State, 607 So.2d 350 (Ala.Crim.App. 1992).
The rationale offered for striking prospective juror no. 98 was that she had been charged with the offense of issuing bad checks. The trial court found this to be a sufficiently race-neutral reason. Again, we agree. "We have repeatedly held that a veniremember's connection with or involvement in criminal activity may serve as a race-neutral reason for striking that veniremember." Wilsher v. State, 611 So.2d 1175
(Ala.Crim.App. 1992), and cases cited therein.
The trial court found that the State's rationale for striking prospective juror no. 75, L.P.R., was sufficiently race-neutral. After a careful review of the record, we disagree. The pertinent portion of the record from the hearing is set forth below:
 "MR. MAXWELL [prosecutor]: Judge, on R., the Clerk's list, and I'll show it to the Court, under L.P.R lists a husband as being E.R., retired. Before I went to work with the district attorney's office, I represented a J.L.R. and in the course of representing a [him] I came to learn that his father is E.R. I don't know whether or not this E.R. is the same E.R. that is the father of J.L.R., but due to the fact that J.L.R has been convicted in this circuit four or five times I couldn't take the chance of it being the same E.R. or a relative of Mr. J.L.R. . . .
 "MR. YOUNG: [defense counsel] May I respond to that, Judge?
 "THE COURT: You may respond at the end of Mr. Maxwell's explanations. Continue.
". . . .
 "MR. YOUNG: [defense counsel] Judge, on the rational that Mr. Maxwell gave for Ms. R., we except and object to that because we feel that that could have been covered on voir dire, any questions to eliminate. As it stands now, Your Honor, my client has no members of his race on the jury. And for the Record, Judge, we feel that the excuse on Ms. R. is shallow.
 THE COURT: Okay. Of course, neither Batson nor [Ex parte Branch] hold that any Defendant is entitled to any particular number of members of his group, his or her group, on the panel. Rather both decisions require the prosecution, in exercising its right to peremptory challenge, to do so in a way that is not based on racial factors. I am acquainted with J.L.R. myself. I presided over a trial in which he was convicted for burglary and I have heard a series of Rule 20 motions concerning convictions before I became a circuit judge and those convictions were held in Judge White's courtroom. I find that the district attorney's explanation of that strike is satisfactory."
(S.R. 15-18.) (Emphasis added.)
In Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991), the Alabama Supreme Court stated:
 "[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination. [Ex parte] Branch, 526 So.2d [609] at 623 [Ala. 1987]; see also People v. Wheeler, 22 Cal.3d 258, 281, 583 P.2d 748, 764, 148 Cal.Rptr. 890, 905 (1978); Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987). Thus, if the prosecutrix thinks that a veniremember may be related to a former defendant, she must ask the veniremember. See State v. Aragon, 109 N.M. 197, 784 P.2d 16, 17 (1989); see also Floyd v. State, 539 So.2d 357, 363
(Ala.Crim.App. 1987) (mere suspicion of a relationship insufficient); Note, supra, at 827 ('prosecutor's self-imposed ignorance [should not] preclude a Batson claim').
 "Here, a simple question directed to the veniremember could have dispelled any doubt about a possible relationship. However, neither the State nor the court engaged in any voir dire on this subject. In the absence of any examination, the trial judge had nothing on which to make the required 'sincere and reasonable effort to *Page 1099 
evaluate the evidence and explanations based on the circumstances as he [knew] them.' Branch, 526 So.2d [at] 624. In reality, he had nothing on which to base an evaluation of the proffered rationale except the averment of the prosecutrix, which in substance, amounted to a 'mere general assertion' of nondiscrimination. See Batson, 476 U.S. at 94, 106 S.Ct. at 1721." (Emphasis added.)
See also Walker v. State, 611 So.2d 1133 (Ala.Crim.App. 1992.)
There is no record of the voir dire conducted by the prosecution in the instant case; however, by the prosecutor's own admission, he does not know whether J.L.R.'s husband was the father of a former client. As defense counsel astutely points out, this could have been ascertained on voir dire.
Thus, in accordance with the principles set forth inBird, supra, we conclude that the trial court erroneously denied the appellant's Batson motion. Accordingly, we must reverse the judgment of the circuit court and remand the cause to the circuit court for a new trial.
In the interest of judicial economy, we will address other issues that may arise in subsequent proceedings.
 II
Prior to trial, the appellant moved to suppress the admission into evidence of the crack cocaine found in his car. This motion was denied. The appellant asserts that his motion to suppress should have been granted because, he argues, the crack cocaine found in the WD-40 can was discovered as a result of an illegal search. Specifically, the appellant argues that the officers had no probable cause to search his car.
If we examine only the evidence presented at the suppression hearing, we would be inclined to conclude that the State had failed to prove probable cause. There is no indication from Jenkins's testimony as to when he learned that the appellant had given the officers a false name. There was also no testimony regarding what steps were taken when the vehicle was stopped, e.g. whether identification was requested, whether a "pat down" was performed, etc. Additionally, there was no testimony from Sheriff Hadden regarding the questioning of the appellant. However, "we are not limited merely to the evidence presented at the suppression hearing, but may also consider the testimony given to the jury." Henry v. State, 468 So.2d 896,899 (Ala.Crim.App. 1984). Accordingly, we will examine both the evidence elicited at the suppression hearing and the evidence presented at trial to determine whether probable cause to search the car was established.
We start our analysis with the premise that the officers were authorized to stop the appellant's car. The information provided by the informant, coupled with corroborating the details "exhibited sufficient indicia of reliability to justify the investigatory stop." Alabama v. White, 496 U.S. 325,110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Although we find that the officers were authorized to stop the vehicle based on reasonable suspicion, the subsequent search of the vehicle cannot be justified unless it falls within an exception to the warrant requirement.
"It is well established that, although the Fourth Amendment prohibits only unreasonable searches, all searches without a warrant are deemed per se unreasonable unless they fall within certain recognized exceptions to the warrant requirement."Mewbourn v. State, 570 So.2d 805, 807 (Ala.Crim.App. 1990) quoting McClellan v. State, 415 So.2d 1238, 1239
(Ala.Crim.App. 1982). One such recognized exception is the "automobile exception" (see Carroll v. United States, 267 U.S. 132,45 S.Ct. 280, 69 L.Ed. 543 (1925)), which authorizes a warrantless search of an automobile if there is probable cause coupled with exigency created by mobility.
In this case, there is no question that the exigent circumstance existed. The automobile was clearly capable of mobility as evidenced by the fact that it was driven to the jail. The only issue to be determined to justify a warrantless search of the automobile pursuant to the automobile exception is whether probable cause existed.
 "It has been stated many times that '[p]robable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations *Page 1100 
of everyday life upon which reasonable and prudent men act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948).' Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala. 1981). 'Probable cause does not require an officer to compile an airtight case against a suspect.' Williams v. State, 440 So.2d 1139, 1145 (Ala.Cr.App. 1983). 'It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband . . . it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.' Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted)."
Mewbourn v. State, 570 So.2d at 808-809. After applying the "totality of the circumstances" test established in Illinois v.Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), to the facts in this case elicited at the suppression hearing and
at trial, we hold that probable cause to search the automobile existed. Based upon the events that occurred once the automobile was stopped, we conclude that the reasonable suspicion required to stop the car ripened into probable cause. Sheriff Hadden's testimony from the trial regarding these events is especially probative. The pertinent portions of the testimony are set forth below.
 "Q. Did y'all have an opportunity to stop a vehicle coming towards Dothan being driven by the Defendant in this case?
"A. Yes, sir, we did.
 "Q. Let me ask you this, Sheriff, before I forget about it. Was it raining out there that night?
"A. It was misting, real foggy, and misting rain.
 "Q. And did you have the opportunity to ask the Defendant his name?
"A. Yes, sir, I did.
"Q. What name did he give you?
"A. Joe Holloway.
 "Q. Sheriff, I want to show you what's been marked as State's Exhibit No. 4 and ask you if you recognize it
"A. Yes, sir, I do.
"Q. And where did you see that before?
 "A. He gave this to us after I stopped him checking for driver's license."
(R. 115-116) (Emphasis added.)
On cross-examination Sheriff Hadden testified as follows:
 "Q. And what time was it that you saw Mr. Andrews's car?
 "A. It was sometime around 1:30/1:40, sometime after 1:30.
 "Q. Okay. And what did y'all proceed to do when you saw Mr. Andrews's car?
 "A. We pulled in behind it and put the lights on and pulled him over.
 "Q. When you say 'lights,' what lights do you mean?
"A. Blue lights or amber lights.
"Q. Did you have any other lights on?
"A. We have wig-wags.
"Q. And did Mr. Andrews stop immediately?
"A. No, sir, he did not.
"Q. What did he do?
 "A. He — it took them probably, just estimate, probably a half a mile or farther before he finally pulled over and stopped.
"Q. So, he stopped in excess of fifty yards?
 "A. Well, the distance — it was a good little bit. It seemed like a long ways.
"Q. More than fifty yards?
 "A. I couldn't say exactly how far. He didn't stop immediately.
"Q. And once he did stop, what did you do?
 "A. I went to the driver's side and asked him to get out and checked the driver's license and identification.
"Q. And did he give you any identification?
 "A. That identification there with Joe Andrews's name on it.
 "Q. So, he gave you — let me get my exhibit number right here. He gave you *Page 1101 
State's Exhibit No. 4, which Mr. Maxwell showed you. He handed this to you?
"A. Right.
 "Q. Okay. So, he handed you this. Did you look at it?
"A. Yes, I did.
"Q. Did you notice the name on it?
"A. Yes, sir, I did.
"Q. Did you notice the picture on it?
"A. I did.
 "Q. So, he gave you identification with his picture on it with a name of Joseph Andrews on it?
"A. Yes, sir.
 "Q. Okay. And then after he gave you the identification, what did he do then, Sheriff?
 "A. I searched him along with Phillip Ketchens — was there with me. We patted him down and searched him there."
(R. 120-122) (Emphasis added.)
This court in Powell v. State, 548 So.2d 590
(Ala.Crim.App. 1988), aff'd, Ex parte Powell, 548 So.2d 605 (Ala. 1989), stated in dicta that if there are reasonable grounds based on heightened suspicion to make a Terry-type stop pursuant to §15-5-30, Code of Alabama 1975, then giving a false name to a legitimate inquiry could provide probable cause for arrest. "A 'palpably false' answer has 'no discernable innocent meaning, and may reasonably be taken to indicate consciousness of guilt.' " Powell v. State, 548 So.2d 590, 605 quoting People v.Superior Court of Los Angeles County, 7 Cal.3d 186,101 Cal.Rptr. 837, 845, 496 P.2d 1205, 1213 (1972).
When the appellant told the sheriff that his name was Joseph Holloway but then produced an identification showing a photograph of the appellant and bearing the name of Joseph Andrews, the reasonable suspicion ripened into probable cause.
Once authorization to conduct a warrantless search of the car pursuant to the automobile exception is established, the officers are not prohibited from moving the car to another location and continuing the search. See Chambers v. Maroney,399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), Florida v.Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984);Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209
(1975). Furthermore, the officers are authorized to search the trunk and the contents of containers within the trunk. UnitedStates v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572
(1982).
The appellant asserts that he was arrested at the scene when he was detained by the officers. He contends that this arrest was made without probable cause and, thus, that any subsequent inventory search of the automobile was not pursuant to a lawful arrest. Accordingly, he argues, the motion to suppress should be granted. He then argues, alternatively, that even assuming he were lawfully arrested, because, he says, the sheriff's department had no established procedures concerning inventory searches the inventory search is invalid and the evidence seized as a result inadmissible.
We see no reason to address these contentions because we find that there was authorization to conduct a warrantless search of the car pursuant to the automobile exception and the evidence was found a result of this legal search.
 III
The appellant contends that the evidence is insufficient to sustain his conviction because, he argues, the State failed to prove beyond a reasonable doubt that the appellant had constructive possession of a controlled substance.
Section: 13A-12-231, Ala. Code 1975, states in pertinent part:
 "(2) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in section 20-2-25(1), is guilty of a felony, which felony shall be known as 'trafficking in cocaine.' If the quantity involved:
 "a. Is 28 grams or more, but less than 500 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $50,000.00." *Page 1102 
This court has held that:
 " 'Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.' German v. State, 429 So.2d 1138, 1142 (Ala.Crim.App. 1982). The kinds of circumstances which connect a defendant with the contraband are unlimited and depend on the facts of each case. Spears v. State, 500 So.2d 96
(Ala.Crim.App. 1986). ' "Where drugs are found on premises of which the defendant was in nonexclusive possession, the fact that they were found among or near his personal belongings may be a circumstance which is sufficient to link him with possession of those drugs." ' McGruder v. State, 560 So.2d 1137, 1140 (Ala.Crim.App. 1989) (quoting Gary v. State, 473 So.2d 604, 605 (Ala.Crim.App. 1985)).
 " 'The standard in reviewing the sufficiency of the evidence is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which a reasonable jury might reasonably so conclude.' Jones v. State, 432 So.2d 5, 8
(Ala.Crim.App. 1983)."
Dority v. State, 586 So.2d 973, 977 (Ala.Crim.App. 1991).
In this case, the information from the informant was corroborated. Additionally, the appellant admitted ownership of the car. When the car was stopped, the appellant was driving. The appellant also admitted that some of the luggage in the trunk belonged to him. He also indicated that he had knowledge regarding the gasoline can upon which the WD-40 can was found. He indicated that he had borrowed this can and had placed it in his trunk along with the tool box.
David Thorne, with the Alabama Department of Forensic Sciences, testified that the cocaine weighed 29.750 grams.
Based on the above, we conclude that the State presented sufficient circumstantial evidence from which a jury could reasonably infer that the appellant knew of the existence of the cocaine. Donahoo v. State, 505 So.2d 1067
(Ala.Crim.App. 1986).
REVERSED AND REMANDED.
All the Judges concur.