503 So.2d 350 (1987)
Charles SLAPPY, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-1530.
District Court of Appeal of Florida, Third District.
February 3, 1987.
Rehearing Denied March 20, 1987.
*351 Bennett H. Brummer, Public Defender, and Michael H. Tarkoff, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Charles M. Fahlbusch, Asst. Atty. Gen., for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
The defendant appeals from an order withholding adjudication and placing him on probation, entered upon a jury verdict finding him guilty of carrying a concealed firearm. Charles Slappy, a black man, contends that the trial court did not follow the dictates of State v. Neil, 457 So.2d 481 (Fla. 1984), when it accepted, at face value, the State's explanation offered to rebut the presumption that peremptory challenges were being used to systematically exclude members of his race from the jury. We agree and reverse.
State v. Neil, which requires an explanation of a party who has used the peremptory challenge in an apparently discriminatory fashion, also places an affirmative duty on the trial court to critically evaluate the proffered explanation and to reject any race-neutral explanation which is not bona fide. The central question here is whether the State made a bona fide showing that its use of the peremptory challenges was for reasons other than race.
During jury selection the State exercised all six of its peremptory challenges. Four of those challenges were exercised against black venirepersons: Oppie Jordan, Rhonda Lumpkin, Mary Ellen Williams, and Frank Williams.
Mrs. Jordan is a disabled widow. The only questions directed to her specifically during voir dire were whether she had ever served as a juror in a criminal case, whether she could be a fair juror in this case and whether she understood the principles of "presumption of innocence" and "proof beyond a reasonable doubt." She responded that she had previously served as a juror in a civil case and that she could be a fair juror with a better understanding of the case.
Mrs. Lumpkin is a dispatch clerk for the telephone company. When asked about prior involvement in the court system, she stated that she had served as a juror in a criminal case and that she believed counsel for the defendant in this case was one of the lawyers involved in that earlier case.[1]
As to Mrs. Williams, questioning by the court and defense counsel disclosed that she was an elementary school teacher's *352 aide, married to a security guard and that she was afraid of guns. She responded that she could nevertheless be a fair juror even though the case involved a firearm.
Frank Williams is also a teacher's assistant in an elementary school. In response to questions by the court and defense counsel, Mr. Williams answered that he was once selected as a juror in a civil case and that he understood the difference between "preponderance of evidence" and "reasonable doubt."
The State exercised four of its six challenges to exclude black members of the prospective jury panel. After the fourth black juror was excused by the State, over the defendant's objection, the court, obviously satisfied that a prima facie showing was made that the State was excluding jurors based on race, ordered the prosecutor to explain his reasons for the peremptory challenges. The exchange between the court and the counsel was as follows:
THE COURT: All right. At this particular juncture Ms. Lumpkin is the fourth black juror excused by the state.
State, why are you excusing Ms. Lumpkin?
ASSISTANT STATE ATTORNEY: She said she thinks she knew [the defense counsel] from previously in her response. Whether or not she did or not did not  I don't want someone on a defense 
THE COURT: Why did you excuse Ms. Jordan?
ASSISTANT STATE ATTORNEY: She didn't seem to be secure about sitting on a jury. She asked questions, I think, twice, whether or not she needs to know anything about the law or criminal justice system. Her health doesn't seem to be very good. I just didn't want someone like that on the jury.
THE COURT: How about Mr. Williams?
ASSISTANT STATE ATTORNEY: Both Mr. Williams and Mrs. Williams I excused because they're both teachers, assistant teachers, and both of them at elementary schools. That to me indicates a degree of liberalism that I prefer not have on a jury.
THE COURT: Liberalism?
ASSISTANT STATE ATTORNEY: Yeah, maybe more sympathetic to people who go astray than people who don't have to deal with kids in a classroom. Always getting into trouble.
DEFENSE COUNSEL: Of course. They accepted Mr. Farrar, who is also a teacher, and I excused him.
ASSISTANT STATE ATTORNEY: He was also in the army.
THE COURT: You never heard of liberals in the army?
ASSISTANT STATE ATTORNEY: I think you are less likely to find help in the military than elementary school.
With a hint of frustration  as if legally obligated to accept the State's explanation  the trial judge concluded his questioning:
THE COURT: Anyhow, I made the inquiry.
The defendant moved to strike the entire jury panel. The court denied the motion, finding that the prosecutor's stated reasons for excluding the four black jurors were "reasonable."
It is significant to this examination that the prosecutor never asked Mrs. Jordan any question regarding her understanding of the proceedings or reflecting on her ability to understand the court's instruction on the law. Nor did he inquire about her health, generally, or question whether she suffered from any physical or mental condition which might impair her ability to serve as a juror. As to Mrs. Williams and Mr. Williams, school teacher aides, the prosecutor asked no questions during voir dire.
This is one of the first cases since Neil was decided just a year ago to focus on the trial judge's responsibility with respect to explanations given by a prosecutor who has been ordered to rebut the presumption that peremptory challenges are being exercised to exclude prospective jurors solely on the basis of ethnicity. There has been even less time for cases in the federal courts presenting the same question to wind through the appellate process since the *353 United States Supreme Court decided the recent case of Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which eased the burden of a criminal defendant to show that a prosecutor is using the peremptory challenge to systematically exclude a member of his minority group.
California, in People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978), was the first state to place constitutional restraints on the exercise of the peremptory challenge. The question presented in this appeal has been before the California Supreme Court on four occasions. We may take guidance from that court's experience and its constitutionally sound resolution of the question.[2]
In People v. Hall, 35 Cal.3d 161, 197 Cal. Rptr. 71, 672 P.2d 854 (1983), the court reviewed a case where the prosecutor had used five of eight peremptory challenges to exclude all black prospective jurors. Concluding that the trial court committed error in failing to determine whether race was a factor in the prosecutor's exercise of peremptory challenges to remove blacks from the jury, Hall's conviction was reversed and the case was remanded for a new trial. With regard to the trial judges' responsibility, the supreme court reiterated:
[I]t is imperative, if the constitutional guarantee is to have real meaning, that once a prima facie case of group bias appears the allegedly offending party be required to come forward with [an] explanation to the court that demonstrates other bases for the challenges, and that the court satisfy itself that the explanation is genuine. This demands of the trial judge a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily, for "we rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination."
Hall, 35 Cal.3d at 167, 197 Cal. Rptr. at 75, 672 P.2d at 858 (citation omitted). In Hall the prosecutor, volunteering reasons for removing two black jurors, explained that one had children the same age as the defendant and that the other had family members in Texas, whereas the defendant had had some contact with the state of Texas while in military service. The supreme court noted that several unchallenged nonblack jurors also had children the defendant's age and that none of them were questioned about possible Texas connections. Such disparate treatment, the court held, was strongly suggestive of bias and could in itself have warranted the conclusion that the peremptory challenge was being exercised for impermissible reasons. Hall, 35 Cal.3d at 168, 197 Cal. Rptr. at 76, 672 P.2d at 858.
In People v. Trevino, 39 Cal.3d 667, 217 Cal. Rptr. 652, 704 P.2d 719, (1985), the California Supreme Court again considered the question, this time in a case where the prosecutor had exercised its peremptory challenges to remove all six venirepersons with "Spanish surnames." Finding a prima facie case of abuse of the peremptory challenge, the trial court ordered the prosecutor to give explanations. After listening to the reasons offered, the trial court denied Trevino's motion for a mistrial, stating:
[The prosecutor] has sustained his burden of justification that the use of the peremptory challenges against these particular jurors was for specific reasons which he explained on the record; [n]ot that they were necessarily members of a certain ethnic group, but because of their particular age or sex, he excused them for those reasons and other *354 specific reasons such as with one juror he mentioned the fact that he had a relative convicted of [a] similar offense or a crime. And these explanations seem to fall within the reasonable use of the peremptory challenges for bias or implied bias that counsel might want to use. For that reason the motion would be denied.
Trevino, 39 Cal.3d at 688-89, 217 Cal. Rptr. at 663, 704 P.2d at 730.
The supreme court reversed, first noting that the trial court was apparently confusing "specific reason" with "specific bias." The latter, a permissible basis for exclusion of a prospective juror, was defined in Wheeler as "a bias relating to the particular case on trial or the parties or witnesses thereto." Wheeler, 22 Cal.3d at 276, 148 Cal. Rptr. at 902, 583 P.2d at 760. Further, a review of the record demonstrated that the prosecutor had not, in fact, satisfied his burden of showing that he excluded the Spanish surnamed jurors on the grounds of specific bias.
Although the prosecutor had relied on age as the most compelling factor underlying his use of peremptory challenges  voicing a concern that the young jurors lacked maturity and might be the same age as the defendant  he made no effort to determine the jurors' ages on voir dire. Nor did he inquire into any age-based biases the jurors might harbor. Moreover, the prosecutor did not challenge another prospective juror whose surname was not Spanish even though he was about the same age as the defendant. The disparate treatment of members of the excluded group and the unchallenged jurors guided the supreme court's analysis.
The latest California case to consider the question is People v. Turner, 42 Cal.3d 711, 230 Cal. Rptr. 656, 726 P.2d 102 (1986), which relied on both Wheeler and Batson v. Kentucky, the recent United States Supreme Court case. There, the California Supreme Court agreed that the State's stated reasons for using peremptory challenges against black jurors were constitutionally insufficient.
In Turner the defendant made a motion for mistrial after the prosecutor used two of his first five peremptory challenges to strike the only black prospective jurors. Their backgrounds and views suggested that they would have been acceptable to the prosecutor had they been white: both had been victims of crimes, and one was a friend of a policeman. After the black venirepersons had been replaced by whites, the prosecutor accepted the panel. The defense then exercised a challenge against a member of the panel and another black was seated. After voir dire, the state "passed for cause" but then immediately exercised a peremptory challenge to strike the newly seated black woman from the panel, leaving an all white jury. The prosecutor did not use any of his remaining six peremptory challenges.
As justification for striking the first black juror the prosecutor explained that the case was based on circumstantial evidence and complicated instructions for which the juror was not suited because he was a truck driver. Noting first that the explanation evidenced an impermissible group bias, the supreme court rejected it for the further reason that the record refuted any implication that the juror lacked the necessary intelligence.
In explaining the challenge to the second black juror the prosecutor said:
I don't remember exactly, but I think it was something in her work as to that she was doing that from our standpoint, that background was not  would not be good for the People's case. And I excused her, along with quite a few other people, too, for the same reason.
Turner, 42 Cal.3d at 724, 230 Cal. Rptr. at 664, 726 P.2d at 110. The record showed that the juror was employed as a hospital administrator and that the prosecutor had not asked any questions about her employment. Rejecting the explanation, the supreme court said it amounted to virtually no explanation. It was also noted that the juror who was selected foreman was married to a registered nurse.
In response to the court's question on voir dire, the third black juror said that as *355 a mother she would find sitting as a juror in the murder case very emotional. The court's final question to her on voir dire was, "Do you think, Miss Shepherd, you could listen to the evidence in this case, the instructions of law, and attempt to reach a just verdict based on the facts as you understand them to be and the law as I state it to you?" Turner, 42 Cal.3d at 726, 230 Cal. Rptr. at 665, 726 P.2d at 111. Her answer was in the affirmative. Although neither counsel followed up the court's voir dire, the prosecutor's justification for the challenge was the juror's alleged statements "that she could not sit impartially because she was a mother of children."
That explanation was held insufficient by the California high court. It ruled that the juror's statement that she would find the case very emotional may well have meant only that she was uncomfortable with the nature of the case  a feeling that was also expressed by other jurors. At the least, said the court, the remark called for a few follow-up questions that would have clarified the statement; therefore, little confidence could be placed in the proffered explanation. On this point, the court quoted in part from its earlier holding in Wheeler:
A prosecutor's failure to engage Black prospective jurors "in more than desultory voir dire, or indeed to ask them any questions at all," before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias.
Turner, 42 Cal.3d at 726, 230 Cal. Rptr. at 665, 726 P.2d at 111 (quoting People v. Wheeler, 22 Cal.3d at 281, 148 Cal. Rptr. at 905, 583 P.2d at 764).
In summary the California cases give meaning to the requirements of Neil v. State and Batson v. Kentucky. After a presumption arises that a party has used its peremptory challenges to exclude prospective jurors on the basis of race, the offending party must articulate "legitimate reasons" which are "clear and reasonably specific" and which are "related to the particular case to be tried." The following will weigh heavily against the legitimacy of any race-neutral explanation: 1) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically; 2) no examination or only a perfunctory examination of the challenged juror; 3) disparate examination of the challenged juror, i.e., questioning challenged venireperson so as to evoke a certain response without asking the same question of other panel members; 4) the reason given for the challenge is unrelated to the facts of the case; and (5) disparate treatment where there is no difference between responses given to the same question by challenged and unchallenged venirepersons.
The explanation given for the challenge of Mrs. Jordan was not the subject of any voir dire examination by the prosecution nor were the reasons given for the challenge specific or legitimate. The explanations given for the challenges to Mrs. Williams and Mr. Williams were also based on an assumed employment group bias, which was not shown to apply to either juror specifically or to the facts of the particular case. That the prosecutor intended, unlawfully, to exclude the teacher aides on the basis of race alone is strongly inferred from the fact that they were challenged without being examined on voir dire and that a nonblack schoolteacher was not challenged.
Although liberalism is, according to the prosecutor, a trait antagonistic to the State's interest and common to schoolteachers, a white schoolteacher, Mr. Farrar, was not challenged by the State. The reason for the apparent disparate treatment, according to the prosecutor, is that military experience might have purged Mr. Farrar of liberal ideology. The trial court was understandably troubled with the idea. It is not shown by the record what liberalism is in this context or how it affects an ability to follow the law in a concealed firearm case. There is also a want of evidence that liberalism plagues school teachers peculiarly or that it may be cured by a stint in the army.
The error in this case, as it was in Hall, is that the trial court apparently considered itself bound to accept all of the prosecutor's *356 explanations at face value. That view, said the California Supreme Court, would constitute an abdication of obligations imposed by the constitution. Hall, 35 Cal.3d at 169, 197 Cal. Rptr. at 76, 672 P.2d at 858-59.
At the time of trial the trial judge was certainly without guidance in Florida or federal law on the precise question. We hold now that it is not sufficient that a prosecutor's explanations, in meeting the presumption that the peremptory challenge is being abused, are facially race-neutral. The trial court must further evaluate the proffered explanations in light of the standards we recognize here, other circumstances of the case, and the judges' knowledge of trial tactics in order to make a reasoned determination that the prosecutor's facially innocuous explanations are not contrived to avoid admitting acts of group discrimination.
Reversed and remanded for a new trial.
JORGENSON, Judge, concurring specially.
I agree that it is clear from this record that the trial court apparently considered itself bound to accept the state's explanations of its peremptory challenges at face value. I also agree that a trial court is not so bound and, therefore, join in this reversal. I am reluctant, however, to approve the notion that, after a finding by a trial court (not present in this case) that a peremptory challenge was not racially motivated, we should engage in an analysis of the reasons offered by a party for the exercise of its challenges. The cold record that we review here does not, and cannot, provide the full flavor of the courtroom dynamic which only the trial judge is in a position to observe. Thus, a weak reason offered by a party for the exercise of a peremptory challenge may be supported by other criteria. See, e.g., Isaacs, Jury Selection: Discovering the Hidden Agenda, 60 Fla.B.J. 21 (Dec. 1986). See also National Jury Project, Jurywork, Systematic Techniques (2d ed. 1986).
This case and the others that are sure to follow involving improper use of peremptory challenges should serve as a basis for our supreme court to reduce the number of peremptory challenges available to the parties in criminal cases. A reduction in the number of peremptory challenges available would make them more valuable in the hands of the parties and reduce the need for this kind of review. See J. Van Dyke, Jury Selection Procedures: Our Uncertain Commitment to Representative Panels 169 (1977) (recommending reductions in number of available peremptory challenges).
NOTES
[1] The defendant does not claim here that the exclusion of Mrs. Lumpkin was racially motivated.
[2] People v. Johnson, 22 Cal.3d 296, 148 Cal. Rptr. 915, 583 P.2d 774 (1978), is not included in the discussion which follows. The prosecutor's explanation in Johnson, that he purposefully excluded all black jurors because the evidence at trial would show that one of the State's key witnesses was heard to refer to the defendant in a racially derogatory manner, was held insufficient.