511 So.2d 762 (1987)
Alphonso FLOYD, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-2087.
District Court of Appeal of Florida, Third District.
September 1, 1987.
*763 Bennett H. Brummer, Public Defender, and Roberta Simon, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Michele L. Crawford, Asst. Atty. Gen., for appellee.
Before BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
This case presents the same question we decided in Slappy v. State, 503 So.2d 350 (Fla. 3d DCA 1987)  whether the trial judge properly accepted at face value the prosecutor's race-neutral explanations for the removal of black venirepersons through exercise of the peremptory challenges. We hold that a presumption of discriminatory use of the peremptory challenge did arise placing a burden on the state to give a credible race-neutral explanation, and that the state failed to satisfy the burden.
Floyd, a black man, came to trial on charges of automobile theft. After voir dire the state used five of its six peremptory challenges to remove five black persons from the six-person venire. A jury was selected but before it was sworn the defendant interposed an objection and requested that the court conduct a hearing, pursuant to State v. Neil, 457 So.2d 481 (Fla. 1984), on grounds that a prima facie case was presented that the state's exercise of the peremptory challenges was unconstitutional. The trial court responded that "based on the information which this court heard at voir dire, this court is not satisfied that there, in fact, was a breach as provided in the Neil case, but in light of the fact that the five strikes were in fact all blacks, I think that the State Attorney should be allowed to indicate for the record, what his reasons were for striking those prospective jurors." The prosecutor agreed that "a cautious approach" required him to state the reasons. They were as follows:
Number One
Ms. Roby in the back row is a student who has lived in Liberty City [a predominantly black community] for five years. She did not react one way or the other. I got no signs from that woman that anything was sinking in, that she was reacting, at all to the questions.
I generally do not, as a general rule, do not like having young students on my juries for superstitious reasons... .
Number Two
And, second one, Mr. Gamble I struck. He is a student, has been arrested for burglary.
Number Three
Ms. Scott I struck and tried to get removed for cause because I felt like with her medical problems, her statement that she was trying to get out of jury service, she did not want to stick  she did not want to stay on a jury and her responses to [defense counsel] and the Court's questions repeatedly with regard to whether or not she would be able to stick to her guns and would be able to put her medical problems out of her mind, the best she could do, best was to say I will try.
Number Four
With regard to Ms. McDaniel, [defense counsel] had a long, fairly long conversation with her, I believe about whether or not if she was the last hold out on the jury, whether or not she would be able to stick to her guns.

*764 She seemed to me to be too eager to acquit the Defendant, too eager to go along with [defense counsel's] suggestions.
In fact, what I had written by her name on my voir dire sheet was too eager to acquit.
... .
Number Five
Finally, Ms. Alexander. The woman on the bottom row, first of all, she seemed very stupid to me.
Just a very dull woman. [Defense counsel] was asking her a question, do you believe that just because that state has filed a document charging Mr. Floyd with a crime, do you believe that he is guilty. Yes. [Defense counsel] then says do you believe he is charged that he is guilty. She finally says no.
She obviously was not paying attention or didn't have the capacity to appreciate the concept.
... .
In moving that the entire panel be stricken the defendant argued that the prosecutor did not speak with the persons he struck from the jury as he did with the white jurors, suggesting that he had already determined to strike the black jurors before inquiry.
In denying the defendant's motion to strike the panel the trial concluded: "Based on what this court already indicated, certainly based upon what Mr. Ranck has indicated as were his bases for striking, the court will deny any request for relief under Neil."
We note at the outset that the defendant demonstrated on the record, at the time of the State's challenges, the race of the persons being challenged. It is also brought to our attention that the assistant state attorney in this case is the same one who gave us Slappy. We conclude, on the threshold question, that the presumption that race was not the basis for the challenges was overcome by the fact that the accused is of a different race than the victim, that the state used five of its six challenges to excuse only persons of the defendant's race, and that there were characteristics of some of the persons excused which suggests that they would not have been excused had they been white. On this record the state was obligated to give an explanation.
In Slappy we held that after a presumption arises that a party has used its peremptory challenges to exclude prospective jurors on the basis of race, the offending party must articulate "legitimate reasons" which are "clear and reasonably specific" and which are "related to the particular case to be tried." Slappy, 503 So.2d at 355. The following, we said, would weigh heavily against the legitimacy of any race-neutral explanation:
(1) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically; (2) no examination or only a perfunctory examination of the challenged juror; (3) disparate examination of the challenged juror, i.e., questioning the challenged venireperson so as to evoke a certain response without asking the same question of other panel members; (4) the reason given for the challenge is unrelated to the facts of the case; and (5) disparate treatment where there is no difference between responses given to the same question by challenged and unchallenged venirepersons.
Slappy, 503 So.2d at 355.
"[T]he striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors."U.S. v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987). In this case the state's first peremptory challenge alone is grounds for reversal. A "superstition" against young students generally does not satisfy the constitutional requirement that the removal of black jurors be for legitimate reasons. Neither is a failure of a venireperson to react emotionally one way or another to questioning on voir dire a reasonably clear and specific explanation. It is not clear what question should have evoked an emotional response, what that *765 response should have been, and whether the desired or expected response was provided by other venirepersons when asked the same question. More significant however is the fact that a white student was not challenged by the state, which is strong evidence that the state attorney's explanation was a subterfuge to avoid admitting discriminatory use of the peremptory challenge.
There is no need to examine the other challenges, but applying the Slappy test it is doubtful whether some of the state's remaining explanations were sufficiently clear and legitimate.
We conclude that the state's explanation for the challenge to the first black venireperson lacked the clarity and legitimacy necessary to overcome the presumption of unconstitutionality.
Reversed and remanded.