The appellant was charged in six separate indictments: three for rape in the first degree, two for sodomy in the first degree, and one for burglary in the second degree. These cases were consolidated for trial. The appellant was found guilty in each case. He was sentenced to consecutive 99-year terms in the State penitentiary on his convictions for the first degree sodomy cases and the first degree rape cases. He was also sentenced to a consecutive 20-year term on the second degree burglary conviction.
 I
The appellant argues that his rights were violated by the manner in which he was *Page 830 
interrogated and repeatedly questioned by the police and that his statements should therefore not have been allowed into evidence.
In the present case, the appellant, during his testimony, made a number of charges against the officers who conducted his questioning, concerning improper tactics used in order to gain a confession. He testified that he was not allowed to make a telephone call; that he was threatened by the officers; that he was not informed of his Miranda rights; and that he was physically abused by being burned with cigarettes and by being beaten. However, the prosecution introduced evidence, through the testimony of various police officers, indicating that the appellant's statements were voluntarily given after, with the exception of one statement, being properly advised of hisMiranda rights. There was testimony by one of the officers who questioned the appellant that, although the appellant had been previously advised of his rights, he was not again so advised before giving one particular statement. The officer testified that he reminded the appellant that he had not been so advised, and that, as he knew the appellant had served as a law enforcement officer for several years, he was certain that the appellant was well aware of his rights. The trial court, however, granted the appellant's motion to suppress that statement on the grounds of the failure to be advised ofMiranda rights and because the trial court did not "like the tenor of the conversation".
However, another statement made by the appellant to other officers was ruled admissible, as being voluntary and made after the appellant was informed of his Miranda rights.
 "Moore v. State, 415 So.2d 1210 (Ala.Cr.App. 1982), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982), is dispositive of the issue now before this court:
 " 'Where the voluntariness inquiry presents conflicting evidence, great weight must be given the trial judge's finding of voluntariness. Even when there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371, 1375 (Ala.Cr.App.), cert. denied, Ex parte Thompson, 347 So.2d 1377 (Ala. 1977), cert. denied, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978). "The trial court does not have to accept the testimony of [the] defendant as to the voluntariness of a confession if there is substantial testimony by others sufficient to constitute a predicate for the admission in evidence of the confession." Bradley v. State, 337 So.2d 47, 50 (Ala.Cr.App. 1976).
 " 'The issue of the admissibility and hence the voluntariness of the statements and the confession in this case turns, as it does in so many others, on the question of which witnesses the trial judge believed.' Moore v. State, supra, at 1214-15. See also Ex parte Singleton, 465 So.2d 443, 445 (Ala. 1985); Todd v. State, 472 So.2d 707, 714 (Ala.Cr.App. 1985)."
Griffin v. State, 500 So.2d 83, 87-88 (Ala.Cr.App. 1986). The State's witnesses provided ample testimony that the appellant's statement was voluntarily given, despite his testimony to the contrary.
Furthermore, although the appellant argues that because his statement was not recorded and ample notes were not taken of his statement, it should not have been allowed into evidence. However, the State may prove the contents of the appellant's statement without a tape recording or a typewritten transcript.Hawkins v. State, 443 So.2d 1312, 1314 (Ala.Cr.App. 1983). "Any person who was present and heard the statement could have testified to its content. (Citation omitted.) The unavailability of a tape recording of a confession does not preclude the admission of the oral testimony of a witness to the inculpatory statement. Fleming v. State, 57 Ala. App. 556,329 So.2d 616 (1976)." Id. The fact that the statement was not recorded *Page 831 
goes to the weight to be given the evidence, rather than its admissibility. Beckham v. State, 389 So.2d 573
(Ala.Cr.App. 1980). Furthermore, "[i]t is not required that a written confession or statement contain the entire confession or the entire conversation between the accused and the person to whom the confession was made. King v. State, Ala. Cr. App.,355 So.2d 1148, 1151." Hobbs v. State, 401 So.2d 276, 282
(Ala.Cr.App. 1981).
We find no abuse of discretion by the trial court in admitting the appellant's statement into evidence.
 II
The appellant argues that the in-court identification of him by the victims flowed directly from an illegal and unduly suggestive pretrial identification. Specifically, the appellant argues that because the victims were shown a single photograph of the appellant prior to trial, the in-court identification was tainted. The appellant further argues that the victims' description of their assailant was vague and that they were unable to identify anyone with certainty, until they were shown the single photograph by a police officer.
The victims in this case, a mother and her two daughters, all testified at trial and identified the appellant as their assailant. The mother testified that, although she could not see the man's face, she described him to the police as a short, muscular, "clean shaven" black man, wearing black gloves and boots, and dark colored pants. She further testified that, although she did not know the man's correct name at that time, she knew him to be her next door neighbor's boyfriend and identified him to the police as "Charlie Robinson." She also testified that she recognized him as the man who had previously been to her home when he was working with Alagasco.
One of the daughters testified that, although he forced her to put a pillowcase over her face, she could see through the pillowcase and observed that he was wearing glasses. She also stated that she could recognize his posture and that he looked like "Charlie," who she knew was the father of her next door neighbor's baby.
The youngest daughter testified that, although she also had a pillowcase over her head, she was able to observe the appellant as he opened a window. She stated that, after being allowed to go to the kitchen to get her sister a glass of water, she turned on the lights and saw his face. She testified that, at that time, although the appellant had pulled his shirt up over his face, she recognized him as the man who was living with their next door neighbor. She further testified that, upon returning to her mother, she informed her that the assailant was the father of their next door neighbor's baby.
 "Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), established a due process right to exclude unreliable identification testimony that results from procedures that are both unnecessarily suggestive and conducive to irreparable mistaken identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401
(1972), established the rule that, where the witness's in-court identification arguably stems from a suggestive out-of-court identification, the question is 'whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive', 409 U.S. at 199, 93 S.Ct. at 382, and whether there was a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), held that, where a pre-trial identification is obtained by a procedure that is both suggestive and unnecessary, 'reliability is the linchpin in determining the admissibility of the identification testimony', 432 U.S. at 114, 97 S.Ct. at 2253, and that the reliability of the identification must be weighed against the corrupting effect of the suggestive identification procedure itself. However, identification evidence derived from an unnecessarily suggestive source need not be excluded if the totality of the circumstances indicates its reliability."
Johnson v. State, 453 So.2d 1323, 1327 (Ala.Cr.App. 1984). InJohnson, this court *Page 832 
noted that "the only hints of suggestiveness in the pre-trial identification procedures" were the fact that the victim was shown a single photograph of the man whom she had previously identified by name and occupation as having been her assailant and the fact that someone had told her that that man would be in court. Id.
In the present case, the in-court identification stems from an independent source, rather than from the photograph.Jackson v. State, 414 So.2d 1014 (Ala.Cr.App. 1982); Terrell v.State, 429 So.2d 656 (Ala.Cr.App. 1982). Moreover, the witnesses' inability to correctly identify the appellant prior to being shown the photograph goes to the credibility of the in-court identification and not to its admissibility; thus, it raises a question of fact to be determined by the jury. Johnsonv. State, supra, at 1328, and cases cited therein.
 III
The appellant argues that the prosecutor improperly excluded a black veniremember for racial reasons, in violation ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986). The trial court ruled that the appellant had failed to make a prima facie showing of discrimination in the jury's selection. In Batson v. Kentucky, 476 U.S. at 96,106 S.Ct. at 1722, the United States Supreme Court addressed a defendant's burden of establishing a prima facie case of purposeful discrimination in the selection of a jury:
 "To establish such a case, the defendant must first show that he is a member of a cognizable racial group [citation omitted], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [citation omitted]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
 "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire may give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
 "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."
Thus, (1) a defendant must establish that he is a member of a cognizable racial group; (2) he must establish an inference by relevant circumstances that the prosecutor used his strikes in a discriminatory manner; and (3) he may rely on the fact that peremptory challenges are a ready vehicle of discrimination. If the defendant does not make this prima facie showing, the State need not provide its reasons for having challenged the black jurors. Thus, the trial court need not construe such reasons unless a prima facie showing is established by the defendant.
In Ex parte Branch, 526 So.2d 609 (Ala. 1987), the Alabama Supreme Court expounded on the "relevant circumstances" which a defendant could submit as leading to an inference of discrimination. Such evidence includes: *Page 833 
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' [People v.] Wheeler, 22 Cal.3d [258] at 280, 583 P.2d at [748] 764, 148 Cal.Rptr. [890] at 905 [1978]. For instance 'it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
 "3. The past conduct of the State's attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [v. Alabama], [380 U.S. 202 at 224, 85 S.Ct. 824 at 838, 13 L.Ed.2d 759
(1965)].
 "4. The type and manner of the State's attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 (1978).
 "6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 503 So.2d at 352 and 355.
 "7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229] at 242, 96 S.Ct. [2040] at 2049 [48 L.Ed.2d 597 (1976)].
 "9. The State used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d at 354, Turner, supra."
Id. at 622-23.
In the present case, the trial court properly found that the appellant did not meet his burden of proving a prima facie showing of purposeful discrimination. The appellant provided no relevant circumstances to suggest that the prosecutor's strikes were used in a discriminatory manner. The record indicates that the prosecutor used four out of seven strikes to exclude black jurors. The trial court stated, "Well, it would appear that there were nine blacks on the jury. . . . [T]he State struck less than half those so I don't see that as a prima facie case of discrimination in which this jury was selected so I will let all the strikes stand." The appellant fails to establish any evidence of a pattern or systematic exclusion of blacks from the venire; nor did he present any evidence of statements or questions by the prosecutor during voir dire or while exercising his challenges implying intentional discrimination; nor has he shown any past conduct by the prosecutor in striking blacks from the jury; nor has he shown any disparate treatment or examination of members of the venire.
Because the appellant failed to raise an inference of purposeful discrimination, the State was not required to come forward with reasons for its strikes, and the appellant failed to meet his burden of proof under Batson v. Kentucky, supra. *Page 834 
 IV
The appellant argues that the evidence was insufficient to sustain his convictions. In making his argument, the appellant again challenges the reliability of the police officers' testimony and the victims' in-court identification. As these issues have been fully addressed, they will not be addressed again. The appellant further argues that the evidence was insufficient because there was no physical evidence to link him to the offenses. He cites as examples, the lack of admission of any fingerprints, body fluids, weapons, or other tangible evidence. However, the State provided the eyewitness testimony of the three victims, as well as the appellant's statement. After examining the evidence, and applying the proper standards of review, we find that there was sufficient evidence presented by the State to allow the jury to conclude beyond a reasonable doubt that the appellant was guilty of the crimes charged in the indictments. "[A] jury may believe or disbelieve all or any part of the testimony presented by either side, and even when all of the evidence against an accused comes from the victim, the jury may believe such uncorroborated testimony beyond a reasonable doubt and convict the accused." Jeffers v. State,455 So.2d 201, 203 (Ala.Cr.App. 1984), citing Gilmore v. State,358 So.2d 501 (Ala.Cr.App. 1978). The State presented sufficient evidence for the jury to conclude, by fair inference, that the appellant was guilty, beyond a reasonable doubt, of the crime charged. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
AFFIRMED.
All Judges concur. *Page 1318