ON RETURN TO REMAND
The appellant was charged on March 11, 1986, in a 13-count indictment with second degree burglary, first degree attempted rape, first degree attempted sodomy, second degree attempted burglary, first degree burglary, first degree rape, first degree sodomy, first degree burglary, first degree rape, first degree robbery, first degree burglary, first degree rape, first degree robbery. The first 10 counts were severed from the last 3 and the appellant was tried on those 10 counts January 6, 1987, in Tuscaloosa Circuit Court. The appellant was convicted on 9 of those counts. The appellant made a timelyBatson[1] motion, and on appeal, this court remanded the case to the trial court for that court to hold a hearing to address the merits of the appellant's Batson claim. 571 So.2d 365. On remand, the trial court found that there existed a prima facie case of racial discrimination in the jury selection. The court then required the State to present race-neutral reasons for its removal of seven black veniremembers from the jury. The trial court then found that the prima facie case of discrimination had been rebutted and that the prosecution had presented "reasonable race-neutral" reasons for its strikes.
In the trial, the State used 7 of its 13 peremptory strikes to eliminate 7 of the 11 black veniremembers. The defendant struck 2 black veniremembers, leaving only 2 black veniremembers to serve on the jury. During the Batson hearing, the State gave the following reasons for its strikes.
1: Veniremember no. 51 (42-year-old, black female) — She knew the defendant's family.
2: Veniremember no. 75 (53-year-old black male) — He had a son who had been convicted of sexually assaulting a child. The record contains no question addressed to the venire or to this juror concerning such a relationship, but the prosecutor had the comment in his original notes and provided the defense a copy of the office card showing the conviction.
4: Veniremember no. 57 (a 63-year-old black male) — He was employed as a laborer and had "poor eye contact" with the prosecutor.
6: Veniremember no. 59 (a 20-year-old black female) — She was young and worked at the University Club, which the prosecutor understood was frequented by defense counsel, his partners, and their spouses. She also lived at Deerfield Apartments, and it was the prosecutor's understanding that the defendant has had some sort of connection with the apartment, and the prosecutor had prosecuted numerous cases involving residents of Deerfield.
8: Veniremember no. 61 (a 45-year-old black female) — She worked at Bryce Hospital and may have known or been affiliated with the defendant who had also worked there. During voir dire she denied knowing the defendant by not responding to the State's questions as to whether anyone knew the defendant.
11: Veniremember no. 38 (a 29-year-old black female) — She was a publisher and the prosecution felt that people in that business tend to be "somewhat liberal."
13: Veniremember no. 37 (a 24-year-old black female) — She was unemployed, single, and young, with her age and unemployment being the "overriding factor" in striking her.
As expressed by the Alabama Supreme Court in Ex parte Bird,594 So.2d 676 (Ala. 1991), "[T]he strength of the defendant's prima facie case depends in a large part, on the number of factors enumerated in [Ex parte] Branch, *Page 415 
[526 So.2d 609 (Ala. 1987)]. . . ." When there are a number of suspicious factors present a more "cogent explanation" is needed for rebuttal.
The factors listed in Ex parte Branch, 526 So.2d 609 (Ala. 1987), that can be used to raise the inference of discrimination are as follows:
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' [People v.] Wheeler, 22 Cal. 3d [258] at 280, 583 P.2d [748] at 764, 148 Cal.Rptr. [890] at 905 [(1978)]. For instance 'it may be significant that the persons challenged, although all black, include both men and women and are [of] a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
 "3. The past conduct of the state's attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)].
 "4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 [905] (1978).
 "6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 504 [503] So.2d at 352 and 355.
 "7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229] at 242, 96 S.Ct. [2040] at 2049 [48 L.Ed.2d 597].
 "9. The state used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d [at] 354, Turner, supra."
Branch, 526 So.2d at 622-23.
In this case, the suspicion of discriminatory intent is raised by the fact that the prosecution used 7 of 13 strikes to eliminate all but 4 black veniremembers. Also, the State excluded veniremembers ranging from 20 to 63 years of age and representing a variety of occupations: e.g., a publisher, teacher, construction laborer, waitress, nursing service, and tire manufacturing, as well as an unemployed veniremember.
This supports the defendant's contentions and raises an inference of discriminatory intent. The burden shifts to the State to rebut the inference. In this case, the prosecution's proffered explanations for its strikes are to be viewed in light of a particularly strong prima facie case. See Ex parteBird, 594 So.2d 676 (Ala. 1991).
During the Batson hearing, the State proceeded to make a showing as to the reasons for its strikes. In regard to veniremember no. 59, this colloquy followed:
 "No. 59 was younger and worked at the University Club. It was a younger *Page 416 
black female. Being a female would have been a positive factor in evaluating the case, because this was a sexual assault, an attempted sexual assault to numerous females. Being younger would have been negative, but she worked at the University Club. The law firm of Drake, Knowles, and Pierce, even though she did not on voir dire indicate she had ever met them, if I remember correctly, but my understanding [is] that the law firm of Drake, Knowles and Pierce, and I can [say] from my own personal experience, have often attended the University Club or been at functions at the University Club because it is my understanding they are members of it. It is also my understanding that Mr. Knowles' wife was a faculty member, and it was my understanding that she was there on different occasions. I also have noted that she lived at Deerfield Housing Project. Now, at the time — and I still don't remember if the facts of the testimony will verify this or not, but at the time the reason I literally wrote that specifically down on my docket sheet was that it was my understanding that the defendant had had some sort of connection to Deerfield Apartments. I also have noted in my dictation after this case was over with I have noted that I have prosecuted numerous cases involving people with Deerfield, and she didn't say that she knew me, but because of those factors, I deemed those factors to strike her for."
Veniremember no. 59 indicated by her response, or lack of it, to voir dire questions that she did not know the defendant or defense counsel. Also, the reason that the veniremember was struck was because she lived in an area with other persons who had been prosecuted is essentially the "high crime area" rationale, with no relevance to this case. Furthermore, the failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination. Branch,526 So.2d at 623. If the prosecution thinks that a veniremember may know defense counsel or defense counsel's spouse, he must ask the veniremember, Ex parte Bird, 594 So.2d 676 (Ala. 1991). See also Floyd v. State, 539 So.2d 357, 363 (Ala.Crim.App. 1987) (mere suspicion of a relationship insufficient). On voir dire, the State asked the venire whether any of the members knew defense counsel, his law partner, his former law partner or their spouses. Veniremember no. 59 indicated by lack of response that she did not know defense counsel. No questions were asked of this veniremember to explore the prosecutor's doubts.
Also, the prosecutor assumed that because this veniremember lived at Deerfield Apartments she knew the defendant or someone the State had prosecuted and would therefore be adverse to the State. It is impermissible to speculate that this veniremember may have heard of the defendant because the defendant had some connection with Deerfield Apartments. Furthermore, there is no evidence that this veniremember would be less interested in law enforcement because she lived in an area where the State had prosecuted other persons. Williams v. State, 548 So.2d 501, 506
(Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028,109 S.Ct. 1159, 103 L.Ed.2d 218 (1989).
The State also failed to give a legitimate race-neutral reason for its challenge of veniremember no. 61. Veniremember no. 61, a 45-year-old black female, was struck because she worked at Bryce Hospital and may have known or had contact with the defendant, who had worked there. In regard to veniremember no. 61, this statement was followed by the State during theBatson hearing:
 "No. 61, and the only reason I am doing this in this particular order is that I am trying to go to the seven strikes of black members first. 61, . . ., she worked at Bryce. What I have indicated is that she had worked at Bryce, she worked for the Department of Mental Health. It is my understanding that the defendant had been a long-time employee there, he had had a leg injury there while working there. She may not recognize him, but may at that particular point, in fact, seeing him and just recognize him *Page 417 
or else may have some affiliation with him because of his employment at Bryce Hospital."
This veniremember did not respond to any questions propounded by either the State or defense on voir dire as to whether any of the members knew the defendant. No other general or specific questions were asked of her to determine when this veniremember was employed at Bryce Hospital or in what department, and whether that time or department coincided with the employment of defendant at Bryce. If the prosecutor thought this veniremember knew the defendant, he should have asked her, A mere suspicion of a relationship is insufficient. Ex parteBird, 594 So.2d 676 (Ala. 1991).
The failure of the State to conduct any meaningful voir dire on a subject of concern is evidence that the explanation is a sham. Branch, 526 So.2d at 623. We therefore conclude that none of the explanations offered by the State for its challenge of veniremembers no. 59 and no. 61 are legitimate race-neutral reasons to rebut a prima facie case of discrimination.
Because the State has failed to come forth with clear race-neutral explanations for the striking of two jurors, the judgment is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986). *Page 1156