McMILLAN, Judge.
The appellant, Timmy Eugene Balentine, was found guilty of sexual abuse in the first degree. He was sentenced to 10 years’ imprisonment.
I.
The appellant argues that the trial judge committed reversible error by denying his motion to suppress his videotaped confes *257 sion. According to the appellant, he was coerced into confessing to the sexual abuse of the alleged victim, seven-year-old K.A. Because the confession was involuntary, he says, its admission into evidence constituted reversible error.
Melissa Beasley, a detective with the Florence Police Department, testified at the suppression hearing regarding the events leading to the confession. According to Detective Beasley, after he was visited by a representative from the Department of Human Resources regarding allegations of sexual abuse, the appellant contacted her, telling her he wanted to talk to her about the allegations. On May 23, 1997, the appellant came to the Florence Police Department to discuss the case ■ with Detective Beasley. The questioning was videotaped. Detective Beasley informed the appellant that he was not under arrest and that he was tree to leave at any time. She advised him of his Miranda rights and stated that she was not promising anything of any value or threatening the appellant in order to induce him to confess. Detective Beasley was not the only interviewer, and she left the room in the middle of the interview and watched the appellant on a monitor in a different room, while two other interviewers continued to question the appellant. Detective Beasley further testified that the videotape accurately reflected the interview with the appellant, which lasted one-and-a-half to two hours.
The appellant argues that the two other interviewers, investigators Jeff Stanfield and Randy England, made certain statements that led him to believe that he would be treated leniently if he confessed and that confused him, thus rendering his confession inadmissible. Among the many statements the appellant complains of were the following:
“This is the kind of thing that can be handled with treatment. This is the kind of thing that the parents will probably end up saying, you know, ‘Hey, we don’t want to prosecute this case. We don’t want to run our seven-year-old through this. We just want the guy to agree to go to counseling.’ You know, and that would be an option.”
“Well, you know, there is a possibility of, like I say, of you just getting help and getting on the straight and narrow. You can pray about it. You can ask for help. We have got people to help you. We are not just about putting people in jail.”
“Our mission is to make sure that you get the help you need so this thing doesn’t turn into something bigger.”
“I mean, the Court will give you help, okay?”
“Did you intentionally do it? And if you did intentionally do it, there is a problem, okay; you are sick, you need to get help. That doesn’t mean you are sick and I think I need to shoot you in the head. That means you need help.”
“And if you did do it ... you have got to get some help. You seem like a good man. You are a hard-working man.”
“You have done something that was inappropriate, but certainly treatable, you know. Now these child molesters out there running the streets, you know, we just as soon cut their heads off and throw them in the jail, but it’s the good guys out here working their tails off with family like you that do things occasionally that are inappropriate, those are the guys that can be treated with simple therapy.”
“You have a, you have a chance of getting help here.”
*258 “We are going to try to get you some help, all right?”
“But this is something minor that’s not going to affect [K.A.]”
“We are going to go ahead and try to get on the phone with someone today, you know, a counselor.”
“I mean, Tim, the girl is not lying. The thing for you to do is tell us what happened. I mean, you can go on with your life. You can work things out with your family, cause you are going to have to work things out with your family.”
The appellant initially maintained that he had never touched K.A. inappropriately, either on purpose or accidentally. However, upon further questioning, the appellant wavered as to whether he had ever touched the victim. Officers England and Stanfield left the room, emphasizing that the appellant needed to tell Detective Beasley the truth. When Detective Beasley returned, the appellant told her that he had not planned to leave without telling her the truth and that the touching was intentional. Detective Beasley gave him the telephone number of a counsel- or.
Dr. Guy Walker, a licensed professional counselor, a certified disability analysis and certified rehabilitation counselor, testified at the suppression hearing on behalf of the appellant. Dr. Walker diagnosed the appellant with attention deficit hyperactivity disorder, the symptoms of which included poor memory, trouble functioning independently, and difficulties concentrating, paying attention, and completing tasks. According to Dr. Walker, the appellant’s behavior during the videotaped confession was consistent with someone suffering from attention deficit hyperactivity disorder. Dr. Walker testified that the appellant responded impulsively to a stressful situation requiring sustained mental effort by finding an escape. Dr. Walker testified that he would place no confidence in such a confession. Thereafter, the trial judge denied the appellant’s motion to suppress, stating that Dr. Walker’s testimony went to the weight that should be placed upon the videotaped confession rather than its admissibility.
In order for a confession to be admitted into evidence, the State must show that the defendant was read Miranda warnings and that the confession was voluntary. Williams v. State, 620 So.2d 82 (Ala.Cr.App. 1992). In this case, Detective Beasley clearly informed the appellant of his Miranda rights. The appellant’s main contention is that his confession was involuntary, because of his mental impairment and because it was induced by promises of leniency. When determining the voluntariness of a confession, this Court must “examine the totality of the circumstances to determine if an implied promise of leniency caused the defendant to make the confession, i.e., if it overbore the will of the defendant.” McLeod v. State, 718 So.2d 727 (Ala.1998). Factors to be considered in applying this test are:
“(1) If Miranda warnings were given;
“(2) The age of the accused;
“(3) The level of education and/or intelligence of the accused;
“(4) The length of the detention;
“(5) The length and nature of the questioning;
“(6) Whether the accused was deprived of food or sleep.”
Schneckloth v. Bustamante, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).
In Arizona v. Fulminante, 499 U.S. 279, 284, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991), the United States Supreme Court stated that to determine if the accused’s will has been overborne a court must analyze the totality of the circumstances. Fulminante, 499 U.S. at 287, 111 S.Ct. at 1252-53. Applying the totality-of-the-circumstances test, we conclude that the appellant’s confession was voluntary. The record, including the videotape of the appellant’s confession that had been admitted into evidence, reveals that *259 several factors weighed upon the appellant, causing him to confess. The officers’ offer to secure counseling for the appellant appears to have been only partially responsible for the confession. The officers never explicitly offered counseling in lieu of prosecution. Officer Stanfield twice reiterated Detective Beasley’s assurances in the beginning of the questioning that “We cannot promise you anything.” Courts in other jurisdictions have held that indirect promises to seek counseling did not render a subsequent confession involuntary. See State v. Loza, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994) and Miller v. Fenton, 796 F.2d 598 (3d Cir.1986).
Moreover, any comments indicating that the appellant’s alleged conduct was merely “inappropriate” were not improper — the officers emphasized that the allegations against the appellant were serious. The appellant was not physically threatened, and the interrogation did not last for an excessively long time. See Pardue v. State, 695 So.2d 199 (Ala.Cr.App.1996). Furthermore, the appellant initiated the interview with Detective Beasley that eventually lead to his confession. See McLeod v. State, supra; Ex parte Gaddy, 698 So.2d 1150, 1155 (Ala.1997).
Although the appellant presented evidence that he suffered from a mental disability, the effect of this alleged disability upon his confession was properly a factual matter to be left to the discretion of the trial court. During the trial, the State produced a witness to rebut Dr. Walker’s conclusion that the appellant suffered from attention deficit disorder. Dr. Susan Bunnell, M.D., a psychiatrist with the Attention Deficit Disorders Clinic at Riverbend, interviewed and evaluated the appellant. She testified that the appellant’s speech was “overly organized,” that he was not distracted by outside factors in her office, and that he was fully capable of staying focused. Therefore, according to her, the appellant did not suffer from attention deficit hyperactivity disorder and his confession was reliable. Dr. Bunnell testified that, after viewing the videotape of the appellant’s confession, she concluded that the appellant was competent during the questioning, that he understood the questions being asked of him, and that he understood the legal and social consequences of his answers. Although Dr. Walker spent more time with the appellant than did Dr. Bunnell, testimony from the two experts created a factual issue for the trial judge’s determination. Therefore, the trial judge’s determination that the appellant’s confession was not affected by a psychological condition and that it was made free of improper threats and inducements is due to be affirmed.
II.
The appellant next contends that the trial judge should have granted his motion to continue the trial and to disqualify the jury because certain statements made by the judge who qualified the jury were prejudicial and warrant a reversal. Judge Alice Martin, who, although not the trial judge, qualified the jury, gave the following instructions to the potential jurors:
“Also, ladies and gentlemen, I’ll ask you to answer each of these questions to the best of your knowledge, because it can sometimes cause a problem if you leave any information out.
“I know of one occasion where recently we had a rape case where a jury had been struck and the case was in progress, and the eight-year-old victim had already testified.
“When a police officer got on the stand, he recognized one of the jurors that he had given a traffic ticket to, and that juror failed to give that information when asked if they knew the police officer.
“A mistrial had to immediately be declared, and the case had to be retried. And the eight-year-old girl was put through that trauma of testifying once again.
“So I tell you that to let you know it’s very important for you to answer the questions as best you can.”
According to the appellant, the example used by Judge Martin was so close to his case, that the use of that example unfairly prejudiced him. In order for improper remarks by a trial judge to warrant a reversal, the remarks “must have influenced the results of *260 the case.” Thompson v. State, 503 So.2d 871, 879 (Ala.Cr.App.1986).
The appellant has failed to show how Judge Martin’s comments influenced the results of his case. Judge Martin made it clear that she was using the example to emphasize the necessity for the potential jurors to be complete and forthright in their answers to voir dire questions. There is no indication that any potential juror might have understood her to be commenting on the appellant’s case itself. Therefore, her comments do not require a reversal.
III.
The appellant finally contends that the trial judge erred by denying his Batson motion when the prosecutor struck two out of three black jurors on the jury venire without, he argues, basing the strikes on meaningful questioning. In Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment required that peremptory strikes of potential jurors be for race-neutral reasons. In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the requirement that the defendant be of the same race as the struck venire-members was abrogated.
The burden of establishing a prima facie case of discrimination is on the party challenging the strikes. Batson, 476 U.S. at 93-94, 106 S.Ct. at 1721-22, 90 L.Ed.2d at 85. The mere fact that the prosecutor struck a large percentage of members of a certain race is not enough to establish a prima facie case of discrimination. Armstrong v. State, 710 So.2d 531, 533 (Ala.Cr.App.1997). In Ex parte Branch, 526 So.2d 609 (Ala.1987), the Alabama Supreme Court listed nine factors that should be considered in determining whether strikes are discriminatory:
“1. Evidence that the ‘jurors in question share[d] only this one characteristic— their membership in the group — and that in all other respects they [were] as hete-rogenous as the community as a whole.’ [People v.] Wheeler, 22 Cal.3d [258,] at 280, 583 P.2d [748,] at 764, 148 Cal.Rptr. [890,] at 905 (1978). For instance ‘it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social and economic conditions.’ Wheeler, 22 Cal.3d at 280, n. 27, [148 Cal.Rptr. 890, 583 P.2d 748,] indicating that race was the deciding factor.
“2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
“3. The past conduct of the state’s attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [ v. Alabama ], 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ].
“4. The type and manner of the state’s attorney’s questions and statements "during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
“5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla.Dist.Ct.App.1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890, 905-06 (1978).
“6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 504 [503] So.2d at 352 and 355.
“7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
“8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229,] at 242, 96 S.Ct. [2040,] at 2049 [48 L.Ed.2d 597 (1976)].
*261 “9. The state used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d at 354, Turner, supra.”
According to the appellant, the prosecutor based his strikes of two potential black jurors merely based upon desultory questioning. The prosecutor asked all of the potential jurors if they had any children. In fact, this was the only question the two black veniremembers who were subsequently struck by the prosecutor responded to. According to the appellant, their responses to this question were not enough to establish race-neutral reasons for the strikes.
The question regarding the children of the veniremembers, however, was a highly relevant question considering that the appellant’s case involved sexual abuse of a child. It was understandable and permissible for the prosecutor to want a jury composed of jurors who had children. Therefore, one of these veniremembers’s response that he had no children was a race-neutral reason for striking him. Furthermore, even though the other veniremember responded that he had children, the trial judge remarked that he was ‘Very, very vague about his children, to say the least.” Because a credibility issue is involved, we are not prepared to reverse the trial judge’s determination that the striking of this veniremember was race-neutral. As we stated in Sockwell v. State, 675 So.2d 4, 18 (Ala.Cr.App.1993):
“A trial court’s decision with regard to a Batson motion is to be reversed only if the decision is clearly erroneous. [Ex parte] Branch, 526 So.2d [609] at 625; Jackson v. State, 594 So.2d 1289 [, 1294] (Ala.Cr.App. 1991).”
Because the trial judge’s denial of the appellant’s request for a Batson hearing was not clearly erroneous, the appellant’s conviction is due to be affirmed.
AFFIRMED.
LONG, P.J., and COBB, BROWN, and BASCHAB, JJ., concur.